UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JULIAN RUEMENAPP, on behalf of himself and all others similarly situated,<br><br>As to State Law Claims<br>JULIAN RUEMENAPP<br>TYLER GREEN<br>TIM LATTO<br>MICHAEL CORBO<br>CONNOR VAZALES<br>LUKE SHUMWAY<br>RONALD REINEKE<br>MATT JANUS<br>CHRISTOPHER STEELE<br>BRETT McGIBONEY<br><br>Plaintiffs,<br><br>vs.<br><br>MERGE TRANSPORTATION, LLC; NUVOCARGO INC.; and JAMIE CIOE, individually,<br><br>Defendants. | C/A: 2:25-CV-12692-RMG<br><br>**AMENDED COLLECTIVE ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Julian Ruemenapp (Ruemenapp), on behalf of himself and all others similarly situated, by and through his undersigned attorney, pursuant to Fed. R. Civ. P. Rule 15(a)(1)(B), files this Amended Complaint against Defendants Merge Transportation, Inc. (Merge), Nuvocargo, Inc. (Nuvocargo), and Jamie Cioe (Cioe) (collectively Defendants).

## NATURE OF CLAIM

1. This is an action, in part, for violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*., (FLSA). Plaintiffs are former and possibly current employees of Defendants Merge and Cioe. Defendants failed to pay

Plaintiffs and similarly situated employees time and half when employees worked over 40 hours in a workweek.

2. Plaintiff Ruemenapp brings this action as a collective action pursuant to 29 U.S.C. §216(b) on behalf of himself and similarly situated employees who suffered damages as a result of Defendants' violations of the FLSA.

3. Plaintiff has given his written consent to bring this action to collect unpaid wages under the FLSA.

4. State Law Plaintiffs also bring this action for violations of the South Carolina Payment of Wages Act § S.C. Code Ann. §41-10-10 *et seq*. (SCPWA).

**PARTIES, JURISDICTION, AND VENUE**

5. Plaintiff Ruemenapp is a former citizen and resident of Charleston County, South Carolina, during the events that led to suit. He currently resides in Michigan.

6. Defendant Merge is a for-profit Limited Liability Company, incorporated in Delaware and maintaining officers and agents and otherwise doing business in Charleston County, South Carolina. Defendant employs people such as Plaintiff and other similarly situated employees to work on its behalf to provide labor for its financial benefit. Defendant is within the personal jurisdiction of this court.

7. Defendant Cioe is a citizen and resident of Charleston County, South Carolina. Upon information and belief, he is the owner and Chief Executive Officer of Merge. Defendant employs people such as Plaintiff and other similarly situated employees to work on his behalf to provide labor for his financial benefit. Defendant is within the personal jurisdiction of this court.

8. Defendant Nuvocargo is a foreign business corporation and for-profit company believed to also be incorporated in Delaware. Upon information and belief, as of April 2025, Nuvocargo has either acquired Merge or is operating under the name of Merge and is otherwise doing business in Charleston County, South Carolina. Defendant employs people such as Plaintiff and other similarly situated employees to work on its behalf to provide labor for its financial benefit. Defendant is within the personal jurisdiction of this court.

9. Defendants, individually or in part, owned and operated an enterprise engaged in interstate commerce as defined by 29 U.S.C. §203(r).

10. Venue is proper in this District because Defendants have conducted substantial and continuous commercial activities in Charleston County.

11. The court has federal question jurisdiction pursuant to 28 U.S.C. §1331 based upon Plaintiff's claims under the FLSA. 29 U.S.C. §216(b).

12. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. §1367 over Plaintiff's state claims, which are brought pursuant to the statutory and common law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

## FACTS

13. Defendants Merge/Nuvocargo provide freight transportation services to customers around the world. Its principal place of business in South Carolina is 1525 Ashley River Road, Suite B, Charleston, South Carolina, 29507.

14. Nuvocargo acquired Merge sometime in the spring of 2025, but at least by April 23, 2026.

15. On April 23, 2025, founder and CEO of Nuvocargo, Inc., Deepak Chhugani, publicly announced that Nuvocargo "acquired" Merge Transportation, LLC.

16. The April 23, 2025 announcement further stated that "[t]he entire Merge team, including their awesome founder Jamie Cioe, is joining Nuvocargo" and that "both Nuvocargo and Merge's customers will benefit from [their] expanded North American logistics & software/AI offerings."

17. On April 29, 2025, founder and CEO of Nuvocargo, Inc., Deepak Chhugani, again publicly shared that Nuvocargo acquired Merge Transportation, including all of Merge's personnel and founder, Jamie Cioe.

18. On May 12, 2025, founder and CEO of Nuvocargo, Deepak Chhugani, stated in a press release that "with the acquisition, we become a full North America logistics business now." The press release further states that "the entire Merge team is expected to join Nuvocargo."

19. On July, 30, 2025, Merge Transportation LLC, publicly holding itself out as "a Nuvocargo Company," announced that it "is now part of Nuvocargo," that it retained the same employees after acquisition, and that Merge's operations now have "a greater scale, smarter tools, and expanded capabilities."

20. Upon information and belief, Nuvocargo accepted the liabilities of Merge upon its acquisition of Merge.

21. Nuvocargo retained the same management structure of Merge, kept many of the same employees, and sells the same services as Merge.

22. Nuvocargo acquired substantially all of Merge's business including (at least) staff, good will, accounts receivable, and customers.

23. Nuvocargo advertised that Merge would now have access to Nuvocargo's (presumably proprietary) AI generated platform.

24. Upon acquisition, Nuvocargo began to exercise management and control over Merge's business affairs.

25. Additionally, Plaintiffs, including additional possible members of the collective class who are current employees, worked or still work under Nuvocargo's ownership of Merge.

26. Upon information and belief, Nuvocargo entered into a due diligence audit period whereby it learned of Merge's business structure and excessive work hours.

27. Upon information and belief, Nuvocargo knew, or should have known, of Merge's failure to pay its employees for overtime hours and other wages due, lack of proper written notice of the normal hours and wages agreed upon, of the deductions that would be made from their pay, and of the time and place of payment of wages.

28. Nuvocargo therefor acquiesced to Merge's business practices and failures described above.

29. Defendant Cioe owns and operates Merge and, upon information and belief continues to act as the critical decision maker for Merge/Nuvocargo. He exercised the authority to hire and fire employees, determine the work schedules of employees, set the rates of pay of employees, and control the finances and operations of the business. As such, Defendant Cioe was the employer of Plaintiffs as defined by 29 U.S.C. §201 *et seq*.

30. Defendant Cioe has worked in the logistics space for over a decade. He has previously been involved as a plaintiff in wage litigation. He was CEO for a different company before started Merge. He is intimately familiar with, and aware of, employment laws in this area including the need to pay employees like the Plaintiffs for overtime worked.

31. He purposefully hired employees who were unaware of their rights so that he could demand that they work overtime without paying them for it.

32. Nuvocargo claims that it is an industry leader in logistics, and also knows that employees like the Plaintiffs should be paid for overtime work.

33. Upon information and belief, certain yet unknown individuals associated with Merge/Nuvocargo may also have the authority to hire and fire employees, determine the work schedules of employees, set the rates of pay of employees, and control the finances and operations of the business. As such, these individuals may be the employer of other similarly situated employees as defined by 29 U.S.C. §201 *et seq*.

34. None of the Plaintiffs had these authorities.

35. Plaintiff Ruemenapp was employed by Defendants Merge and Cioe from on or about April 2022, through May 2025.

36. Other named Plaintiffs also worked at Merge during this time-frame or even later than May 2025.

37. Although the exact date of Nuvocargo's acquisition of Merge is uncertain, upon information and belief, Ruemenapp and other similarly situated employees still worked at Merge after Nuvocargo's acquisition.

38. Although Defendants Merge and Cioe did not have a specifically identified job title or job description for Plaintiffs, and other similarly situated employees, Plaintiffs and other similarly situated employees generally referred to themselves as Brokers. During all relevant times, Plaintiffs were employees as defined by the FLSA at 29 U.S.C. §203(e).

39. As a Broker, Plaintiffs' primary duties were to arrange freight transportation for existing clients as well as to solicit new clients, mostly by telephone, for Merge and to perform all clerical tasks associated with providing services to the client.

40. When he was hired, Plaintiff Ruemenapp was paid an annual salary of $50,000.

41. Plaintiff Ruemenapp, and all Plaintiffs, worked for Defendants with the understanding their compensation and pay structure would be in compliance with federal and state wage laws.

42. Plaintiffs, and other similarly situated employees, were not exempt employees under the FLSA pursuant to their job duties. They did not receive additional compensation for any time worked over the forty-hour workweek.

43. Plaintiffs, and similarly situated employees, were required to work every weekday from 8:00 a.m. until 6:00 p.m. with no designated lunch break. In fact, they were regularly denied the right to take a meaningful break for lunch.

44. Plaintiffs, and other similarly situated employees, were also required to work one Saturday per quarter and to be on call one Sunday per quarter.

45. Merge advertises that it provides 24/7 support. As such, Plaintiffs, and other similarly situated employees were expected to be available 24/7 to take customer telephone calls. Typically, Plaintiffs worked at least an additional two to twenty hours per week (Monday – Friday) to meet the demands of Defendants.

46. Defendants were aware of the long hours Plaintiffs, and other similarly situated employees, worked and, in fact, encouraged them to work longer hours in order to increase profits for Defendants.

47. Defendants failed to provide Plaintiffs and other similarly situated employees notice in writing of the normal hours and wages agreed upon.

48. Defendants failed to provide Plaintiffs and other similarly situated employees notice in writing of the deductions that would be made from their pay.

49. Defendants failed to give written notice of the time and place of payment of wages to Plaintiffs and other similarly situated employees.

50. Early in Plaintiff Ruemenapp's employment, Defendants changed his payment structure and promised bonuses based on performance.

51. The promised bonuses were never put in writing.

52. In November of 2022, Plaintiffs and other similarly situated employees were promised bonuses if the company hit certain sales targets.

53. The sales target was hit, and a small bonus was combined with a Christmas bonus around the end of 2022.

54. The earned bonuses were never paid as promised.

55. At one point, Coie told Plaintiffs that commissions would not be offered, but that hard work, including overtime work, would be worth it in the form of a bonus in the end once the company was sold.

56. By June of 2023, Plaintiff Ruemenapp was managing his own accounts. Around this time, Defendant Coie offered him a shift from a salary to a tiered commission payment structure where he would receive a draw applied against earned commissions. This was accepted.

57. Plaintiff was promised a draw of $27,666 gross profit as well as a 4% commission on any profits above that up to $50,000, a 10% commission on any profits between $50,000 - $100,000, and a 15% commission on any profits between $100,000 - $150,000.

58. Other similarly situated employees, including named Plaintiffs experienced similar shifting pay structures, never receiving them in writing.

59. Other named Plaintiffs were promised bonuses in exchange for their "hard work" and overtime hours once the company was sold.

60. Upon information and belief, other Brokers were offered and accepted similar pay structures.

61. These earned bonuses were never paid.

62. Plaintiff Reineke and Shumway were promised, as part of their compensation agreements, payment for a percentage of the value of the Merge based upon its sale price.

63. Defendants never paid Reineke and Shumway these earned wages.

64. Defendants failed to provide Plaintiffs with written notice of their new payment structures. Upon information and belief, these structures were never put in writing for any similarly situated employees.

65. Upon information and belief, there were no policies for consistent pay scales for employees. Rather, each employee's pay seemed to be determined by how Defendant Cioe felt about each employee rather than a set company policy about payment or bonus structure.

66. Defendant Ruemenapp continued to work for Merge after it was acquired by Nuvocargo.

67. Upon information and belief, certain putative members of the class still work for Merge and/or Nuvocargo after its acquisition of Merge.

**<u>FOR A FIRST CAUSE OF ACTION</u>**
**FLSA – Failure to Pay Overtime Wages**
**(Collective Class Claims)**

68. Plaintiff realleges and incorporates by reference all preceding allegations as if specifically set forth herein.

69. Plaintiff brings this action as an opt-in Collective Action pursuant to 29 U.S.C. §216(b) on behalf of a class of individuals who were or are employed by Merge/Nuvocargo as a Broker. All were non-exempt employees and worked more than 40 hours per week and were not compensated for overtime worked.

70. At all times, Defendants were an "employer" within the meaning of the FLSA. 29 U.S.C. §203(d).

71. At all times, Defendants were an "enterprise" within the meaning of the FLSA. 29 U.S.C. §203(r).

72. At all times, Plaintiff and other employees of Merge were "employees" within the meaning of the FLSA. 29 U.S.C. §203(e).

73. At all times, Plaintiff and other employees of Merge were "non-exempt" employees under the FLSA.

74. Title 29 U.S.C. §207(a) requires employers to compensate their employees at a rate not less than one and a half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

75. Plaintiff and similarly situated employees worked well in excess of forty (40) hours per week, and Defendants failed to compensate them in accordance with the FLSA's overtime provision.

76. The work and pay records of Plaintiff and other similarly situated employees are in the possession, custody, and control of Defendants, and Defendants are under a duty, pursuant to 29 U.S.C. §211(c) to maintain and preserve such payroll and other employment records so that Defendants' liability can be determined.

77. Defendants violated the FLSA as set forth herein. Defendants conduct, as alleged, constitutes a willful violation of the FLSA as set forth in 29 U.S.C. §255(a).

78. Plaintiff and similarly situated employees are entitled to recover unpaid overtime wages, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs of this action for Defendants' willful violation of the FLSA.

**CAUSES OF ACTION 2-11**
**Action 2 – Julian Ruemenapp**
**Action 3 - Tyler Green**
**Action 4 – Tim Latto**
**Action 5 – Michael Corbo**
**Action 6 – Connor Vazales**
**Action 7 – Luke Shumway**
**Action 8 – Ronald Reineke**
**Action 9 -Matt Janus**
**Action 10 – Christopher Steele**
**Action 11 – Brett McGiboney**

**All for Violation of SCPWA**
**(Failure to Provide Writings, Failure to Pay Overtime, Wrongful Retention of Wages)**

79. All Plaintiffs reallege and incorporate by reference all preceding allegations as if specifically set forth herein.

80. Defendants consistently employed more than five employees from 2021 through the current day.

81. Defendants are employers subject to the requirements of the SCPWA and prohibitions set forth in S.C. Code §§41-10-10, *et seq*.

82. All Plaintiffs were not provided written notice of the normal hours and wages agreed upon, to include their regular salary, their commission structure for wages, and their bonus structure, in violation of S.C. Code §41-10-30.

83. All Plaintiffs were not provided written notice of the time and place of payment of their wages, to include their regular salary, commissions and bonuses in violation of S.C. Code §41-10-30.

84. All Plaintiffs were withheld bonuses earned by them in violation of S.C. Code §41-10-40.

85. All Plaintiffs were denied overtime wages owed to them in violation of S.C. Code §41-10-40.

86. All Plaintiffs were not paid their prevailing wages due, which were higher than the federal minimum wage, as required by S.C. Code §41-10-40 and -50.

87. The Defendant knowingly and willfully and in bad faith retained the wages it owed to all Plaintiffs for the overtime wages, prevailing wages, and bonuses earned.

88. In knowingly and willfully retaining the wages it owed to all Plaintiffs the Defendant has violated S.C. Code §41-10-40.

89. All Plaintiffs have properly brought suit to recover their wrongfully retained wages pursuant to S.C. Code §41-10-80(c).

90. All Plaintiffs are entitled to an award of damages in the amount of actual damages (unpaid wages and unpaid bonuses), treble damages (as Defendant's conduct was willful), attorney's fees, and costs of this action.

**Prayer for Relief**

WHEREFORE, Plaintiffs, and all other similarly situated employees and former employees, are entitled to and pray for the following relief:

A. With respect to the FLSA class:

1. An Order permitting this case to proceed as a collective action;
2. Prompt notice, pursuant to 29 U.S.C. §216(b) to all class members that this litigation is pending and that they have the right to "opt-in" to this litigation;
3. An Order declaring that the Defendants' violated the FLSA;
4. An Order declaring that the Defendants' violations of the FLSA were willful;
5. An injunction prohibiting Defendants from engaging in future overtime violations;
6. An Order granting judgment to Plaintiff and other class members for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages;
7. An Order awarding Plaintiffs and represented parties their costs and reasonable attorneys' fees; and

B. With respect to the SCPWA claims:

1. An Order declaring that the Defendants' violated the SCPWA;
2. An Order declaring that the Defendants' violations were willful and in bad faith;
3. An injunction prohibiting Defendants from engaging in future SCPWA violations;
4. An award of damages for wages not recoverable under the FLSA;
5. An award of treble damages as the violation of SCPWA was willful and in bad faith;
6. Pre-judgment and post-judgement interest, as provided by law;

7. Reasonable attorney's fees;

8. The costs and expenses for Plaintiffs to bring this action;

9. Such other injunctive and equitable relief as the Court may deem just and proper.

SAXTON & STUMP, LLC

By: ***/s/Rene Stuhr Dukes***
Rene Stuhr Dukes, Esq.
Bar #10627
Cody Groeber, Esq.
Bar #12186
151 Meeting Street, Suite 400
Charleston, SC 29401
(843) 386-4885
(843) 823-6501
rdukes@saxtonstump.com
cgroeber@saxtonstump.com
*Attorneys for Plaintiff*

June 22, 2026
Charleston, South Carolina